UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES PERRY and DOMINQUE YARBRO,

|  |  |
|---|---|
| Plaintiffs, | Case Number 07-14036 |
|  | Honorable David M. Lawson |

v.

CITY OF PONTIAC, a municipal corporation,
VAL GROSS, Chief of Police Pontiac Police
Department, POLICE OFFICER WILLIAM
OLSEN and POLICE OFFICER DARRYL COSBY,

Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING PART DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SECOND SET OF REQUESTS TO PRODUCE, DEFENDANTS' MOTION FOR PROTECTIVE ORDER PRECLUDING DEPOSITIONS OF OFFICERS WITTEBORT, GIOLITTI, WERNER, WOOD, AND THE KEEPER OF THE RECORDS FOR THE CITY OF PONTIAC, AND THE PLAINTIFFS' MOTION TO COMPEL DEPOSITIONS AND FOR SANCTIONS, AND DENYING THE DEFENDANTS' MOTION FOR PROTECTIVE ORDER PRECLUDING DEPOSITIONS OF OFFICERS WHEATCROFT, LUDD, AND HOHENDORF

The matter is before the Court on the defendants' motion to strike plaintiffs' second set of requests to produce directed to defendant City of Pontiac [dkt. #68], the defendants' motion for protective order precluding depositions of Officers Wheatcroft, Ludd, and Hohendorf [dkt. #76], the defendants' motion for protective order precluding depositions of Officers Wittebort, Giolitti, Werner, Wood, and the keeper of the records for the City of Pontiac [dkt. #79], and the plaintiffs' motion to compel depositions of certain officers and the *duces tecum* deposition of the keeper of the records for the City of Pontiac Police Department, for entry of default judgment, and for sanctions [dkt. #80]. For the reasons discussed below, the Court will grant in part and deny in part the defendants' motion to strike plaintiffs' second set of requests to produce directed to defendant City of Pontiac; the defendants' motion for protective order precluding depositions of Officers Wittebort,

Giolitti, Werner, Wood, and the keeper of the records for the City of Pontiac; and the plaintiffs'
motion to compel depositions of certain officers and the *duces tecum* deposition of the keeper of the
records for the City of Pontiac Police Department, for entry of default judgment, and for sanctions.
Additionally, the Court will deny the defendants' motion for protective order precluding depositions
of Officers Wheatcroft, Ludd, and Hohendorf.

## I.

The plaintiffs filed their complaint based on 42 U.S.C. § 1983 on September 25, 2007
alleging that the defendant police officers used excessive force in violation of the Fourth
Amendment when deploying a Taser to effectuate an arrest.  Several months later, on February 1,
2008, defendant Olsen moved to stay the proceedings entirely or, alternatively, only as to him
because he was involved as a defendant in a criminal case arising from the same incident that led
to the filing of this action.  On February 6, 2008, the Court prohibited the parties from taking
depositions until April 8, 2008, excused defendant Olsen from answering interrogatories, and
required Olsen to respond to document requests unless the act of so doing could be considered
testimonial.  On April 9, 2008, the Court entered a Case Management and Scheduling Order that
required discovery to be completed by October 31, 2008.  On March 12, 2009, the Court extended
the discovery deadline to May 11, 2009.

On May 18, 2009, the Court stayed the proceedings to allow the completion of defendant
Olsen's criminal trial but authorized the plaintiffs to complete the depositions of Shawn Warner,
John Wood, and Bryant Flye while the case was stayed.  *See* Order Staying Proceedings [dkt. #58].
The Court lifted the stay on September 16, 2011.  Approximately two weeks before lifting the stay,
the Court entered an Amended Case Management and Scheduling Order that required "Initial

Disclosures (as to Defendant William Olsen) Exchanged By: September 7, 2011" and extended the "Discovery Cutoff" date to November 30, 2011. Am. Case Management and Scheduling Order [dkt. #63]. The Amended Case Management and Scheduling Order also required defendant Olsen to file an amended answer to the complaint by September 7, 2011.

The plaintiffs have served a number of discovery requests on all the defendants, and the defendants have objected to them. The first such request is the plaintiffs' third set of document production requests (inadvertently mislabeled as the plaintiffs' second request) served on defendant City of Pontiac on October 18, 2011. The remaining discovery requests consist of deposition notices of Pontiac police officers. On November 8, 2011, plaintiffs' counsel sent defense counsel a letter stating that she wanted to take the depositions of Officers Wheatcroft, Ludd, and Hohendorf. On November 14, 2011, the plaintiffs noticed the depositions of Officers Ludd and Wheatcroft, and two days later the defendants filed the present motion for protective order precluding the depositions of Wheatcroft, Ludd, and Hohendorf. On November 23, 2011, plaintiffs' counsel served deposition notices for Officers Wittebort, Giolitti, Werner, and Wood for depositions on November 30, 2011. Plaintiffs' counsel also served a notice of *duces tecum* deposition on the keeper of the records for the City of Pontiac Police Department for a deposition on November 29, 2011. The notice served on the keeper of the records required him to bring the following documents:

> 1) Copy of any written statements provided during Internal Investigation #06-096, including but not limited to: Lieutenant Miller and any other written statement;

> 2) Any documents from Chief Gross or any other superior to Lt. Robert Miller regarding the Internal Investigation of Darryl Cosby.

> 3) A copy of use of form [sic] forms or subject management forms for the following incident reports:
> a. Trayon Quantay Ford, regarding a raid at 244 E. Pike, Pontiac, MI on or about May 16, 2006;

   b. Tommie Lee Harrison, regarding a raid at 244 E. Pike, Pontiac, MI
   on or about May, 2006;
   c. Tyquan Dwight Carrol, regarding a raid at 244 E. Pike, Pontiac, MI
   on or about May, 2006;
   d. Anthony Bobo, regarding a raid at 244 E. Pike, Pontiac, MI on or
   about May, 2006; and
   e. David Gomez, regarding a raid at 244 E. Pike, Pontiac, MI on or
   about May 13, 2006.
   f. Regarding the excessive force complaints dated February 13, 1998,
   May 15, 2006 and November 11, 2006, regarding Darryl Cosby;
   g. Regarding the excessive force complaint dated March 17, 1998,
   regarding William Olsen;
   h. Regarding the excessive force complaint dated April 26, 2002,
   regarding Val Gross.

4) Training record specifically for the usage of taser for William Olsen, Wheatcroft,
Miller and Cosby.

5) A copy of any and all Internal Investigation Reports and/or any related
Professional Conduct Reports regarding any of the following civil complaints: *Bobo
vs. City of Pontiac*, *White vs. Krupa*, *White vs Phifer*, *Harvey vs. City of Pontiac*,
*McCumons vs. Marougi*, *Dent vs. Janczarek*, *Gross vs. Pontiac*, *Jones vs. Cosby*[,]
*Alexander vs. City of Pontiac*, *Jones vs. City of Pontiac*, *Stevens vs. City of Pontiac*[,]
*Wood vs. City of Pontiac*.

6) A list of all officers who were certified in 2005 to 2011 for the use of the taser.

7) A copy of any policy or procedure regarding conducting an Internal Investigation
(According to Lt. Miller's May 5, 2009, deposition, there is a policy which tells how
to conduct an Internal Investigation. See page 34, line, 4).

8) A copy of any policy regarding the use of the taser.

Mot. for Protective Order [dkt. #79], Ex. A, Notice of Dep.

On November 29, 2011, defendants' counsel informed plaintiffs' counsel that they would

not be producing the requested officers.

II.

The defendants have moved to strike the plaintiffs' third set of requests to produce and for

protective orders precluding the plaintiffs from deposing certain Pontiac police officers, and the

-4-

plaintiffs have moved to compel those depositions and for default judgment, along with other sanctions. The parties' motions will be discussed in turn.

A.

The defendants move to strike the plaintiffs' third set of requests to produce directed at the City of Pontiac. The defendants argue that discovery was reopened for the limited purpose of completing discovery that had been prevented by the stay of this case until the completion of defendant Olsen's criminal trial. Defendants Cosby, Gross, and the City of Pontiac argue that discovery was not reopened with respect to the other defendants, and the plaintiffs cannot show good cause for directing new discovery toward the City of Pontiac. The plaintiffs respond that the Court did not limit discovery to Olsen, and nothing in the Court's order supports the defendants' limited-discovery interpretation. The plaintiffs are correct. Nothing in the Court's order lifting stay [dkt. #65] or the Amended Case Management and Scheduling Order [dkt. #63] can be read to limit discovery in the way suggested by the defendants. *See Abner v. Saginaw County*, No. 05-10323, 2007 WL 4322167, at *4 (E.D. Mich. Nov. 28, 2007) ("It is well settled that the Court speaks through its written orders and judgments, not its opinions and oral pronouncements.")

However, the defendants also argue that the plaintiffs are making broad-reaching discovery requests that could have been made at the beginning of this litigation, which occurred over four years ago. They contend that the plaintiffs could have requested early on that the City of Pontiac produce the following items they now seek: defendant Olsen's training record; copies of written statements provided during the internal investigation of Olsen; Olsen's, Wheatcroft's, Miller's, and Cosby's training records for the use of Tasers; copies of policies and procedures regarding the use of Tasers; and a copy of the entire file for internal investigation 06-096. Although the defendants

-5-

did not invoke the protection of Federal Rule of Civil Procedure 26(b)(2) by name, their argument essentially is that they should be excused from answering the plaintiffs' third set of requests to produce because the plaintiffs "had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii). Rule 26(b)(2)(C) requires that a court,

> [o]n motion or on its own, . . . limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

The Court has "wide discretion" to limit discovery, and must balance the relative benefits and burdens. *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to "go fishing" and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)).

The plaintiffs argue that they would have served additional discovery within the original May 11, 2009 discovery time period had the defendants timely responded to their original requests to produce. The plaintiffs contend that later production stimulated their latest requests. The defendants vigorously dispute the validity of that argument, contending that a number of the requests

-6-

relate to information provided at Lieutenant Miller's May 5, 2009 deposition, not recently produced material. Although the defendants concede that "[a] few requests relate back to materials recently produced by Defendants," Reply at 1, they argue that those requests are indefensibly overbroad. As an example, the defendants point to a document request for every use-of-force form or subject-management form related to every complaint of excessive against any Pontiac police officer from 1997 through 2008. The Court will discuss each request for documents separately.

1.

Request to produce number 1 seeks a "[c]opy of any written statements provided during Internal Investigation #06-096, including but not limited to, Lieutenant Miller and any other written statement." It appears that Internal Investigation #06-096 focuses on the use of the Taser in the present case. The plaintiffs state that they are in possession of an unredacted copy of Lieutenant Flye's report on Internal Investigation #06-096. *See* Pls.'s Mot. to Compel Lt. Miller to Answer Questions [dkt. #69], Ex. C, Flye Report. The report includes summaries of Lieutenant Flye's interviews with the following people: both plaintiffs; defendant Olsen; defendant Cosby; Charles Tolliver, a resident of 66 Henderson, Pontiac, Michigan; Julia Thomas, an individual present at 66 Henderson during the raid; Lieutenant Miller; Sergeant Hohendorf; and Officers Ludd, Wheatcroft, Main, Janczerak, Birch, McDougal, McDonald, Chandler, Marougi, Locricchio, and Wood. The report also contains defendant Olsen's and Lieutenant Miller's written statements.

The Court sees no reason to require the City of Pontiac to produce documents already in the plaintiffs' possession. Therefore, the City of Pontiac will not be required to produce the statements contained in Lieutenant Flye's report. However, the City of Pontiac will be required to produce the written statements provided during Internal Investigation #06-096 that are not contained in

Lieutenant Flye's report.  The City of Pontiac must inform the plaintiffs if no other written statements exist.

## 2.

Request to produce number 2 seeks: "Any and all transcribe[d] statements of the following individuals[:] William Olsen, Officer D. Wheatcroft, Darryl Cosby, Officer Ludd and Lieutenant Miller, James Perry and Dominique Yarbro."  The Court assumes that the plaintiffs seek the identified individuals' statements made during the internal investigation of Darryl Cosby and William Olsen regarding the raid at 66 Henderson, Pontiac, Michigan on October 12, 2006.  On September 16, 2011, the Court ordered the defendants to produce all tape recordings of any statements made by any individual during that investigation.  In the plaintiffs' second motion to compel discovery [dkt. #71], the plaintiffs argue that the defendants have failed to produce the statements of Officers Wood, McDonald, McDougal, Birch, Chandler, Locricchio, and Hohendorf.  The plaintiffs do not assert that the defendants failed to produce the other statements mentioned in the request to produce.  The Court is left to assume that the defendants produced the requested statements.  Therefore, the Court will grant the defendants' motion to strike with respect to request to produce number 2.

## 3.

Request to produce number 3 asks the defendants to produce "[a] copy of PPD Policy 9-6-1." The defendants have not offered any reason why they should not be required to produce the requested material.  Therefore, the defendants' motion to strike is denied with respect to request to produce number 3.

## 4.

Request to produce number 4 aks for "[a]ny policy which indicates how often an officer must recertify for taser usage." The defendants have not offered any reason why they should not be required to produce the requested material. Therefore, the defendants' motion to strike is denied with respect to request to produce number 4.

5.

Requests to produce numbers 5, 6, and 15 through 20 seek specific sections of the Pontiac Police Department's Manual of Conduct that Lieutenant Flye believed certain officers violated during the October 12, 2006 raid on the house located at 66 Henderson, Pontiac, Michigan. The plaintiffs did not obtain an unredacted copy of Lieutenant Flye's report of Internal Investigation #06-096 until October 13, 2011. The plaintiffs are entitled to the information sought in the requests to produce, and their requests are not unduly burdensome  Therefore, the defendants' motion to strike will be denied with respect to requests to produce numbers 5, 6, and 15 through 20.

6.

Request to produce number 7 seeks the training record for William Olsen. The defendants argue that the City of Pontiac should not be required to produce Olsen's training record because the plaintiffs could have requested it earlier in the litigation. It would seem that Olsen's record of training would have been important to the plaintiffs' failure-to-train claim against the City of Pontiac, and they certainly could have asked for Olsen's training record earlier. Nonetheless, per the Court's prior order, discovery had been reopened when the latest request was served. The plaintiffs' failure to request the information earlier was nullified by the delay occasioned by the stay for Olsen's criminal case. Moreover, the requested material goes to the heart of the present lawsuit

-9-

and cannot be obtained by any other means.  Therefore, the Court will deny the defendants' motion to strike with respect to request to produce number 7.

7.

Request to produce number 8 asks for the records for any training on the use of a Taser for Olsen, Wheatcroft, Miller, and Cosby.  For Olsen, that request is subsumed in request number 7 because the defendants will be required to produce all of Olsen's training records.  That request is irrelevant as to Miller and Cosby because the plaintiffs do not allege that Miller and Cosby were involved with the tasing incident.  There is reason to believe, however, that Wheatcroft handed Olsen his Taser to use on the plaintiffs.  Officer Wheatcroft's Taser training record is relevant. Therefore, the Court will grant in part the defendants' motion to strike request to produce number 8.  The defendants will be required to produce Officer Wheatcroft's training record regarding the use of a Taser.

8.

Request to produce number 9 asks for: "Any and all reports and/ or complaint for any PPD officers which were accused of tasering individuals while in handcuffs."  That request is overbroad because it is not limited to a specific time period.  Excessive force complaints that arose after the incident involving the plaintiffs have no bearing on the plaintiffs' case against the City of Pontiac. Although the defendants have produced a list of all excessive force complaints against Pontiac police officers from 1997 through 2008, it is possible that the department's records contain information on the use of a Taser on a handcuffed individual that did not lead to an official complaint of excessive force.  Furthermore, a simple list of the complaints provides little substance regarding the incidents.  The plaintiffs are entitled to information on Pontiac police officers' use of

-10-

Tasers on handcuffed individuals during the relevant time period.  Therefore, the Court will deny the defendants' motion to strike request to produce number 9.  The Court, however, will limit the request to reports and complaints against Pontiac police officers accused of tasering handcuffed individuals from 1997 to October 12, 2006.

9.

Request to produce number 10 asks for "[a]ny and all reports and/or complaint for any PPD officers which were accused of using any type of force while an individual was in handcuffs."  It is not clear how a response to that request furnish information relevant to the plaintiffs' case for failure to train police officers in the proper use of Tasers.  On the other hand, if a problem existed with police officers' gratuitous use of violence against restrained individuals, then broader training may have been called for.  Moreover, the complaint alleges that Cosby kicked, punched, and pepper sprayed the plaintiffs.  The Court will deny the motion to strike request number 10, except to limit it temporally as with request number 9.

10.

Request to produce number 11 asks for "[a] copy of William Olsen's written statement which he provided during the Internal Investigation #06-096 and any statement he gave to Sgt. David Robertson."  As mentioned earlier, the plaintiffs are in possession of Olsen's October 13, 2006 written statement to Lieutenant Miller, and the defendants will be required to produce any written statement made during internal investigation #06-096 in response to request to produce number 1. What remains is the request to produce written statements defendant Olsen gave to Sergeant David Robertson.  That request is too broad because it ranges far beyond the present case.  Therefore, the

-11-

Court will limit that request to written statements defendant Olsen gave to Sergeant David Robertson regarding the October 12, 2006 raid on the house located at 66 Henderson, Pontiac, Michigan.

11.

Request to produce number 12 asks for "[a]ny and all policies dealing with the treatment or mistreatment of detainees or prisoners or individuals in custody." The Court does not understand what is meant by "treatment . . . of detainees," and it is unclear how such information has any bearing on the present case. However, records of mistreatment of detainees before the October 12, 2006 incident could lead to the discovery of admissible evidence. Therefore, the Court will deny the defendants' motion to strike request to produce number 12, but modify it accordingly.

12.

Request to produce number 13 seeks "[a] copy of PPD taser policy and any other policies and procedures involving the use of tasers." The Pontiac Police Department's Taser policy is relevant, and the plaintiffs' request to produce the policy is not overbroad. Therefore, the defendants' motion to strike request to produce number 13 will be denied.

13.

Request to produce number 14 asks for "[a]ny report regarding the October 12, 2006, use of Wheatcroft's taser during the raid at 66 Henderson, Pontiac, Michigan 48341." The plaintiffs' request is reasonably tailored and seeks relevant information. The defendant, therefore, will be required to produce any report regarding the October 12, 2006 use of Wheatcroft's Taser during the raid at 66 Henderson, Pontiac, Michigan.

14.

Requests to produce numbers 21 through 23 seek unredacted copies of professional conduct reports for defendant Olsen, David Wheatcroft, and Brian Wood.  The Court believes that the plaintiffs are entitled to the reports.  However, the defendants may withhold or redact any portion of the reports that they believe are privileged, provided that they do so in accordance with Federal Rule of Civil Procedure 26(b)(5).

15.

Request to produce number 24 asks for "[a] copy of any and all Internal Investigation Reports and/or any related Professional Conduct Reports regarding any of the following civil complaints: *Bobo vs. City of Pontiac*, *White vs. Krupa*, *White vs Phifer*, *Harvey vs. City of Pontiac*, *McCumons vs. Marougi*, *Dent vs. Janczarek*, *Gross vs. Pontiac*, *Jones vs. Cosby*, *Alexander vs. City of Pontiac*, *Jones vs. City of Pontiac*, *Stevens vs. City of Pontiac*[,] *Wood vs. City of Pontiac*."  The defendants have not offered a convincing argument as to why the plaintiffs should not be provided the requested material.  The reports associated with the civil complaints, which appear to deal with allegations of excessive force by Pontiac police officers, describe incidents that predate the incident in this case, and they are relevant in establishing municipal liability.  Therefore, the Court will deny the defendants' motion to strike with respect to request to produce number 24.

16.

Request to produce number 25 asks for "[a] copy of each and every use of force form or Subject management form in relationship to each of the complaints for excessive force listed on Exhibit A to the Plaintiff Second set of Requests to Produce."  The Court has not been provided with Exhibit A to the plaintiffs' third set of requests to produce and, therefore, cannot determine if the plaintiffs' request is overly burdensome.  Nor can the Court determine that the information sought

-13-

is relevant.  Therefore, the Court will grant the defendants' motion to strike request to produce number 25.

17.

Request to produce number 26 asks the defendants to produce "[a] list of all officers who were certified in 2005 to 2011 for the use of the taser."  The plaintiffs' request is overbroad in that it seeks irrelevant information.  The plaintiffs' request will be limited to officers who were certified in 2005 through 2007 to use a Taser.

18.

Request to produce number 27 asks for "[a]ny and all policies regarding completion of subject management reports."  Aside from the defendants' general argument that the plaintiffs could have requested this material several years ago, the defendants have not offered a specific argument as to why they should not be required to produce the Pontiac Police Department's policy regarding the completion of subject management reports.  Discovery was reopened, and the plaintiffs submitted that request during the reopened discovery period.  Therefore, the defendants' motion to strike respect to request to produce number 27 will be denied.

19.

Request to produce number 28 asks for "[a] copy of the diagram completed by William Olsen during his interview regarding the Internal Investigation #06-096."  The plaintiffs are entitled to Olsen's diagram, and the defendants have not offered a convincing argument as to why they should not be required to produce it.  Therefore, the defendants' motion to strike request to produce number 28 will be denied.

20.

-14-

Request to produce number 29 demands "[a] copy of the subject management form involving the macing of the Plaintiffs on October 12, 2006." The plaintiffs' request is sufficiently tailored, and the defendants will be required to produce the requested subject management form. The defendants' motion to strike request to produce number 29, therefore, will be denied.

21.

Request to produce number 30 asks for "[a] copy of any policy or procedure regarding conducting an Internal Investigation." The Court does not believe that the requested material is relevant and will grant the defendants' motion to strike that request.

22.

Requests to produce numbers 31 through 33, 35 through 37, 40, and 41 seek a number of documents from Lieutenant Miller's internal investigation of Darryl Cosby for his alleged use of excessive force against several individuals, including Anthony Bobo and Tequan Carroll. The requests seek relevant information and are tailored sufficiently to not be overly burdensome. Therefore, the Court will deny the defendants' motion to strike those requests.

23.

Request to produce number 34 asks for "a copy of a print out [from the Professional Standards database] which indicates the following information for all complaints involving excessive force: Date of Allegation, Name of officer[,] disposition[,] and training received." The defendants have provided a list of every excessive force complaint from 1997 to 2008 that details the officer involved and the disposition of each complaint. The plaintiffs' request for information regarding the officer's "training received" is ill-defined and not designed to lead to the discovery

-15-

of admissible evidence. Therefore, the Court will grant the defendants' motion to strike request to produce number 34.

24.

Request to produce number 38 asks for "[a] copy of the policy which instructs an officer as to when to complete a use of force form or a subject management form," and request to produce number 39 asks for "[a] copy of any policy regarding incident reports." Both requests seek specific policies that are relevant in the present case. Therefore, the defendants' motion to strike those requests will be denied.

25.

Request to produce number 42 seeks "[a] copy of an incident report for every officer that has used a taser during an arrest and the use of force form or subject management." Although the plaintiffs' request seeks relevant information, it is overbroad and unduly burdensome. The current case deals with the use of a Taser on handcuffed detainees in 2006. Information about the use of a Taser on an individual who had not been subdued would shed little light on any of the contested issues in this case. The defendants already have been ordered in request number 9 to produce information on the narrower category of incidents: those involving use of a Taser on a handcuffed individual. Because request to produce number 42 seeks irrelevant and duplicative information, the defendants' motion to strike that request will be granted.

26.

Request to produce number 43, like request number 42, is overbroad and duplicative. Request number 43 demands "[a] list of all officers who, according to Lt. Miller, have gotten in trouble for using force while detainees were handcuffed." The information sought by request

-16-

number 10 covers the category of information that is discoverable in this case. Therefore, the Court will grant the defendants' motion to strike request to produce number 43.

27.

Requests to produce numbers 44 and 45 seek information from internal investigation #06-096. In some respects, the requests are duplicative because, in responding to request to produce numbers 1 and 28, the defendants will be required to produce the written statements provided during the internal investigation and defendant Olsen's diagram. However, the Internal Affairs Department file for investigation #06-096 may contain relevant documents that are not included in the previous requests to produce. Therefore, the Court will require the defendants to produce the entire file for investigation 06-096. The defendants may redact or withhold portions of the file provided that they do so in accordance with Federal Rule of Civil Procedure 26(b)(5).

B.

In their motion to preclude the depositions of officers Wheatcroft, Ludd, and Hohendorf, the defendants argue that those depositions should not go forward at this late date because the plaintiffs cannot demonstrate good cause for waiting four years after the case was filed to depose those witnesses. The defendants point out that Wheatcroft and Ludd were identified as being present at the raid on 66 Henderson in the defendants' answers to the plaintiffs' first set of interrogatories, which were served on the plaintiffs on April 7, 2008, and all three were identified as potential witnesses in the defendants' initial disclosures, which were served on January 5, 2009. The plaintiffs argue that the Court's Amended Case Management and Scheduling Order did not limit discovery to any particular party or witness and the depositions were noticed within the deadlines established in that order. The plaintiffs also argue that Wheatcroft's and Ludd's testimony is

-17-

relevant because they witnessed the defendants tasering the plaintiffs.  The plaintiffs also argue that Hohendorf, as sergeant in charge of training, has relevant information concerning defendant Olsen's training on the use of a Taser.

Federal Rule of Civil Procedure 26 allows broad discovery in civil litigation, including "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  However, Rule 26's "desire to allow broad discovery is not without limits."  *Scales*, 925 F.2d at 906.  Upon good cause shown, Federal Rule of Civil Procedure 26(c)(1) authorizes a court to enter protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1); *Surles*, 474 F.3d at 306.  The party seeking a protective order has the burden to demonstrate good cause.  Fed. R. Civ. P. 26(c)(1); *Lewis v. St. Luke's Hosp. Ass'n*, No. 96-4147, 1997 WL 778410, at *3-4 (6th Cir. Dec. 9, 1997).

The defendant makes a good point: the efficient prosecution of this lawsuit would seem to demand that the important depositions be taken early, and there is no good reason that plaintiffs' counsel should have engaged in foot dragging.  The flaw in that argument, although perhaps a minor one, is that early discovery might have had to be repeated because the case against defendant Olsen was stayed.  Certainly, the plaintiffs could have taken those depositions before now, but there is no apparent strategic advantage for the plaintiffs to be gained by delaying them.  And the Court does not believe that allowing the plaintiffs to depose the officers will subject them or the parties to this case to annoyance, embarrassment, or undue burden.  Therefore, the Court will deny the defendants' motion for protective order precluding depositions of officers Wheatcroft, Ludd, and Hohendorf.

C.

The defendants make a similar argument in their motion for protective order precluding the depositions of officers Wittebort, Giolitti, Werner, Wood, and the keeper of the records for the City of Pontiac: the defendants argue that the plaintiffs cannot demonstrate good cause for waiting four years from the filing of this case to depose them. But it is the defendants who seek the protective order, and therefore it is the defendants who must demonstrate good cause. As noted above, the plaintiffs' delay alone does not satisfy that burden.

The defendants also argue that the records that the plaintiffs seek from the keeper of the records duplicate those requested in the plaintiffs' third set of Requests to Produce. The defendants are correct. Many of the documents listed in the notice of deposition are also listed in the third set of requests to produce. The Court has adjudicated the defendants' motion to strike and determined that the defendants must produce many of those documents. If the defendants comply with this order, there is no reason to subject the keeper of the records for the City of Pontiac Police Department to a deposition. Therefore, the Court will grant the defendants' motion for a protective order with respect to the keeper of the records.

D.

The plaintiffs have filed a motion to compel the depositions of certain officers and the *duces tecum* deposition of the keeper of the records for the City of Pontiac Police Department, for entry of default judgment, and for sanctions. They argue that deposing Officers Wittebort, Giolitti, Werner, and Wood will help them establish several vital parts of their case. The Court finds that the plaintiffs are entitled to depose Officers Wittebort, Giolitti, Werner, and Wood, and will order that those depositions proceed at a mutually agreeable time and place. However, as mentioned above

-19-

there is no reason to depose the keeper of the records. Therefore, the Court will deny the plaintiffs' motion in that respect.

The plaintiffs' request for sanctions under Federal Rule of Civil 37(b) is inappropriate. Sanctions under Rule 37(b) are available only when a party fails to comply with a court order to provide or permit discovery. Fed. R. Civ. P. 37(b). The Court has not ordered the defendants to produce Officers Wittebort, Giolitti, Werner, or Wood or the keeper of the records for depositions. Therefore, the plaintiffs' motion will denied in all other respects.

III.

For the reasons discussed above, the following is **ORDERED**:

1. The defendants' motion to strike plaintiffs' second (actually the third) set of requests to produce directed to defendant City of Pontiac [dkt. #68] is **GRANTED IN PART AND DENIED IN PART**.

2. The defendants are not required to produce documents in response to requests to produce 2, 25, 30, 34, 42, and 43 from the plaintiffs' third set of requests to produce.

3. Request to produce 1 is limited to written statements provided during Internal Investigation #06-096 that are not contained in Flye's report.

4. Request to produce 8 is limited to Officer Wheatcroft's training record regarding the use of a taser.

5. Request to produce 9 is limited to reports and complaints of Pontiac police officers accused of tasering handcuffed individuals from 1997 through October 12, 2006.

6. Request to produce 10 is limited to reports and complaints of Pontiac police officers accused of using any type of force on handcuffed individuals from 1997 through October 12, 2006.

7. Request to produce 11 is limited any written statement defendant Olsen gave to Sergeant David Robertson regarding the October 12, 2006 raid on the house located at 66 Henderson, Pontiac, Michigan.

8. Request to produce 12 is limited to any policy dealing with prisoners that have complained of mistreatment.

9. Request to produce 26 is limited to officers who were certified in 2005-2007 to use a taser.

10. The documents ordered to be produced herein shall be made available to plaintiffs' counsel **on or before January 16, 2012**.

11. The defendants' motion for protective order precluding depositions of officers Wheatcroft, Ludd, and Hohendorf [dkt. #76] is **DENIED**.

12. The defendants' motion for protective order precluding depositions of Officers Wittebort, Giolitti, Werner, Wood, and the keeper of the records for the City of Pontiac [dkt. #79] is **GRANTED IN PART AND DENIED IN PART**.

13. The plaintiffs are precluded from deposing the keeper of the records for the City of Pontiac Police Department.

14. The plaintiffs' motion to compel depositions of certain officers and the *duces tecum* deposition of the keeper of the records for the City of Pontiac Police Department, for entry of default judgment, and for sanctions [dkt. #80] is **GRANTED IN PART AND DENIED IN PART**.

15. The depositions of Officers Wittebort, Giolitti, Werner, and Wood shall proceed at a mutually agreeable time and place **on or before January 30, 2012**.

16. The plaintiffs' motion to compel depositions of certain officers and the *duces tecum* deposition of the keeper of the records for the City of Pontiac Police Department, for entry of default judgment, and for sanctions is denied in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  January 4, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 4, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL