UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES PERRY and DOMINQUE YARBRO,

        Plaintiffs,                      Case Number 07-14036
                                                        Honorable David M. Lawson

v.

CITY OF PONTIAC, a municipal corporation,
VAL GROSS, Chief of Police Pontiac Police
Department, POLICE OFFICER WILLIAM
OLSEN and POLICE OFFICER DARRYL COSBY,

        Defendants.
_____/

**<u>ORDER DENYING PLAINTIFFS' MOTION TO COMPEL LIEUTENANT MILLER TO ANSWER QUESTIONS REGARDING THE INTERNAL INVESTIGATIONS OF DEFENDANTS OLSEN AND COSBY AND REQUIRING DEFENDANTS TO PRODUCE DOCUMENTS</u>**

The matter is before the Court on the plaintiffs' motion to compel Lieutenant Robert Miller to answer deposition questions regarding the internal investigations of defendants William Olsen and Darryl Cosby. The plaintiffs deposed Miller previously in this case and now want leave to depose him again. The plaintiffs seek an order compelling Miller to answer questions regarding the internal investigations of defendants Olsen and Cosby that he previously was instructed not to answer. The Court finds that the discovery sought can be obtained from other sources that are more convenient and less burdensome and therefore will deny the plaintiffs' motion. The defendants, however, will be required to produce to the plaintiffs all documents related to the internal investigation of Darryl Cosby initiated by John Woods's complaint and any document regarding the internal investigation of Darryl Cosby generated by defendant Gross and any other of Miller's superiors.

I.

On April 6, 2009, the plaintiffs gave notice of their request for *duces tecum* deposition of non-party Robert Miller on April 20, 2009. The notice of deposition stated that Miller was required to bring the following documents:

> (1) Complete and legible copies of the Responses to Admissions which were served upon Lt. Robert Miller on March 21, 2009.
> (2) Any and all documents related to the Internal Investigation of Darryl Cosby initiated by John Woods complaint.
> (3) Any documents from Chief Gross or any other superior to Lt. Robert Miller regarding the Internal Investigation of Darryl Cosby.

Pls.' Mot. to Compel *Duces Tecum* Deps. of Defs. Val Gross, Darryl Cosby, and Witness Robert Miller, Ex. A, Notice of Deps. at 2. Also on April 6, 2009, the plaintiffs noticed the *duces tecum* depositions of defendant Val Gross and defendant Darryl Cosby for April 28, 2009. The notices required Gross and Cosby to bring a number of documents to their depositions. On April 24, 2009, all three deponents objected to the depositions. Miller argued that he did not have an obligation to respond to requests for admissions because he is not a party to the case and that the plaintiffs' others requests for documents sought documentation that is either privileged, irrelevant, or not reasonably calculated to lead to the discovery of relevant or admissible evidence. The defendants, subject to their objections, agreed to produce Miller at the date and time scheduled for deposition.

Although the defendants objected to Gross's and Cosby's deposition notices, the defendants expressed a willingness to produce the non-privileged portions of the internal investigation of Darryl Cosby initiated by John Woods's complaint, the non-privileged portions of the internal investigation file regarding the investigation of Cosby and Olson, the portions of Cosby's disciplinary record related to claims and allegations of excessive force, the documents in its possession regarding civil

actions filed against Cosby arising out of allegations of excessive force, and copies of Cosby's training records that are relevant to this litigation.

The plaintiffs deposed Gross and Cosby on April 28, 2009. During the depositions, plaintiffs' counsel did not ask Gross or Cosby to produce any of the requested documentation. On April 28, 2009, the plaintiffs moved to compel the *duces tecum* depositions of defendants Gross and Cosby and witness Robert Miller. Miller's deposition was scheduled for May 5, 2009 and proceeded as scheduled without the benefit of the Court's adjudication of the plaintiffs' motion to compel. The plaintiffs asked Miller the following questions, among others, during his deposition:

> (1) Did [Officer Janczarek] indicate, in his statement, that he had witnessed Cosby use excessive force on any detainee?
> (2) Do you know whether or not Wheatcroft was disciplined regarding his conduct at the -- during [the tasering] incident?
> (3) There's been testimony by Chief Gross that Wheatcroft was disciplined for violating policies and procedures. Do you have any indication what policies and procedures Wheatcroft violated?
> (4) Are you aware of any policies and procedures Wheatcroft violated?
> (5) Did Olsen violate any policies or procedures?
> (6) Did you report to Chief Gross or some other supervisor that Olsen violated policy and procedure?

Pls.' Mot. to Compel Miller, Ex. A, Miller dep. at 79, 96-98. Defense counsel instructed Miller not to answer the first and fifth questions, claiming that the communications were privileged under the officers' Fifth Amendment right against self incrimination as stated in *Garrity v. New Jersey*, 385 U.S. 493 (1967). Defense counsel also asserted the deliberative process privilege with respect to all of the questions but the first. Nonetheless, Miller answered the sixth question in the affirmative. On May 18, 2009, the Court stayed the case until the conclusion of defendant Olsen's criminal trial.

The Court lifted the stay on September 16, 2011 after learning that defendant Olsen's criminal prosecution had come to an end. On the same day, the Court, unaware that Miller had been

deposed earlier, granted in part and denied in part the plaintiffs' emergency motion to compel *duces tecum* depositions of defendants Val Gross, Darryl Cosby, and Robert Miller, and ordered the defendants to produce at Miller's deposition all documents related to the internal investigation of Darryl Cosby initiated by John Woods's complaint and all documents from Chief Gross or any other superior to Miller regarding the internal investigation of Darryl Cosby. The Court denied the motion with respect to defendants Gross and Cosby because the plaintiffs deposed them and did not ask either of them to produce the requested documents.

The plaintiffs scheduled a second deposition for Miller on November 22, 2011 but adjourned it to provide the Court time to rule on the plaintiffs' motion to compel Miller to answer questions regarding the internal investigations of defendants Olsen and Cosby.

II.

The plaintiff makes two arguments as to why Miller should be required to answer questions about the internal investigations of defendants Olsen and Cosby. First, defendant Gross waived the deliberative process privilege regarding the internal investigation of Cosby because, during his deposition, he answered questions about why he closed the investigation and defense counsel did not object. Second, the defendants waived the deliberative process privilege with respect to the internal investigation of Olsen by making an unredacted copy of the internal investigation report available in the public record.

As an initial matter, the plaintiffs have to clear the hurdle set by Federal Rule of Civil Procedure 30(a)(2)(A)(ii), which requires a party to obtain leave of court before deposing an individual who has been deposed once before. The trial court has discretion in deciding whether to grant leave to take a second deposition, *Roberts v. Oklahoma*, 110 F.3d 74, 1997 WL 163524, at *9

(10th Cir. 1997) (table), and it must do so "to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 30(a)(2). Federal Rule of Civil Procedure 26(b)(2) requires a court to

> limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Because the plaintiffs deposed Miller on May 5, 2009, they may not depose him again without leave of court. The plaintiffs have not sought such leave, but the Court will construe the plaintiffs' present motion as one for leave to depose Miller again and to compel him to answer questions about the internal investigation of Cosby and Olsen.

The defendants argue that the plaintiffs' motion should be denied because the plaintiffs did not ask Miller to produce any documents during his deposition, essentially forsaking an earlier opportunity to request the documents. The defendants' argument is not entirely accurate. During Miller's deposition, the plaintiffs asked about an excessive force complaint lodged against Cosby regarding the alleged mistreatment of a detainee named Anthony Bobo. Miller could not remember certain details of the complaint and his investigation. Miller's inability to recollect the particulars of his investigation prompted the following exchange:

> Q: Fair statement to say, if you had the file with you today, which I asked you to bring, you would be able to determine that answer?
> A: Yes.

Resp., Ex. A, Miller dep. at 64. Moreover, the plaintiffs are challenging the defendants' assertion of a privilege. They want Miller to answer the six questions he refused to answer earlier, set out above.

However, there is no reason to require Miller to submit to a second deposition if the plaintiffs already have the answers to their questions. The second question inquires whether Miller knows if Officer Wheatcroft was disciplined for his conduct on October 12, 2006. Defendant Gross has testified that "[he] agreed with and sanctioned the discipline of Officer Wheatcroft." Pls.' Mot. to Compel Miller, Ex. B, Gross dep. at 40. Miller's testimony on this topic would be redundant. Therefore, the Court sees no reason to grant leave for a second deposition to require Miller to answer the second question.

The third, fourth, and fifth questions seek Miller's knowledge on which policies and procedures Wheatcroft and Olsen may have violated during the events of October 12, 2006. The Court finds it puzzling that the plaintiffs would demand an answer to this question from Miller. Although Miller was present during the raid on October 12, 2006, certainly there are events that transpired that he did not witness. Lieutenant Flye, the officer assigned to conduct the internal investigation regarding the events of October 12, 2006 who interviewed the plaintiffs and the Detroit police officers present, would be a better source of that information. But questioning Flye is unnecessary because the plaintiffs have an unredacted copy of his report of Internal Investigation #06-096. The report delineates each section of the Pontiac Police Department's Manual of Conduct and Procedure that Flye believed Olsen, Wood, and Wheatcroft violated on October 12, 2006. The Court sees no reason to grant leave for a second deposition to require Miller to answer the third, fourth, or fifth questions.

The sixth question asks whether Miller reported to Chief Gross or some other supervisor that Olsen violated policy and procedure during the raid on October 12, 2006. Miller already answered this question during his deposition:

> Q: Did you – there has been testimony by Darryl Cosby that both you and he went to Gross and told them (sic) about Olsen's conduct. Did you do that, first of all?
> A: I did, yes.

Defs.' Resp., Ex. A, Miller dep. at 99. There is no reason to require Miller to submit to a second deposition to answer the same question twice.

In their first question, the plaintiffs ask whether Officer Janczarek's statement, provided during the internal investigation of Cosby, indicated that he witnessed Cosby use excessive force on any detainee. The defendants assert that Janczarek's statement is protected by the rule set out in *Garrity v. New Jersey*, 385 U.S. 493 (1967). In *Garrity*, the Supreme Court held that the state was prohibited by the Fifth Amendment from using in subsequent criminal proceedings police officers' statements obtained during an internal department investigation under threat of removal from office. 385 U.S. at 500. The protections of *Garrity v. New Jersey* do not apply in this case. By its terms, the Fifth Amendment right against self-incrimination applies to criminal cases. U.S. Const. amend. V ("No person . . . shall be compelled *in any criminal case* to be a witness against himself." (emphasis added)); *Chavez v. Martinez*, 538 U.S. 760, 766-67 (2003). The current suit is not a criminal prosecution and does not raise the same concerns about compelled testimony. *Garrity* prevents the use of a public employee's compelled statements in a prosecution for the same conduct under investigation. *McKinley v. City of Mansfield*, 404 F.3d 418 (6th Cir. 2005). However, *Garrity* presents no obstacle to the use of such statements in collateral prosecutions, *ibid.* (citing *United States v. Veal*, 153 F.3d 1233, 1243-44 (11th Cir. 1998)), and civil cases, *see Frierson v. City of*

*Terrell*, No. 02-2340H, 2003 WL 21955863 (N.D. Tex. Aug. 15, 2003). Incriminating testimony compelled by a grant of immunity or by other means remains available for use in related civil cases, even if the declarant reasserts a Fifth Amendment privilege. *See Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983). The defendants' objection based on *Garrity* is not well taken.

In its September 16, 2011 order, the Court, unaware that Miller had been deposed already, ordered the defendants to produce any and all documents related to the internal investigation of Cosby initiated by John Woods's complaint. Presumably, if Janczarek provided a statement during the internal investigation, it would be included in the materials just mentioned, and the actual statement, more than Miller's recollection of it, would reveal whether Janczarek stated he saw Cosby use excessive force. The Court believes that requiring the defendants to produce the above-mentioned documents is a more convenient and less expensive way to provide the plaintiffs with the requested information. The Court, therefore, will not require Miller to submit to a second deposition. However, the Court will require the defendants to produce all documents related to the internal investigation of Darryl Cosby initiated by John Woods's complaint as well as any document regarding the internal investigation of Darryl Cosby generated by defendant Gross or any other of Miller's superiors.

### III.

Although the plaintiffs are entitled to know whether Officer Janczarek indicated in his statement that he witnessed Cosby use excessive force, the Court believes that requiring Miller to submit to a second deposition to answer that question is unduly burdensome considering that the plaintiffs may review the internal investigation file for Cosby and obtain the same information. Therefore, the Court will require the defendants to produce any and all documents related to the

internal investigation of Darryl Cosby initiated by John Woods's complaint as well as any document regarding the internal investigation of Darryl Cosby from defendant Gross or any other of Miller's superiors and will deny the plaintiff's motion to compel Lieutenant Miller to answer questions regarding the internal investigations of defendants Olsen and Cosby.

Accordingly, it is **ORDERED** that the plaintiffs' motion to compel Lieutenant Miller to answer questions regarding the internal investigation of defendants Olsen and Cosby [dkt. #69] is **DENIED**.

It is further **ORDERED** that the plaintiffs' request for leave to depose Robert Miller a second time is **DENIED**.

It is further **ORDERED** that the defendants must produce to the plaintiffs any and all documents related to the internal investigation of Darryl Cosby initiated by John Woods's complaint and any document regarding the internal investigation of Darryl Cosby from defendant Gross or any other of Miller's superiors **on or before February 1, 2012**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 19, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 19, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL